UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDEANALYTICS, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>   Defendant. | Case No. 15-cv-04101-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 21, 22 |

Plaintiff MedeAnalytics, Inc. ("Mede") filed this insurance coverage action against Federal Insurance Company ("Federal"), alleging breach of contract and breach of the implied covenant of good faith and fair dealing. According to Mede, Federal breached the parties' insurance policy by denying its duty to defend Mede in a lawsuit filed by third party Stella Systems, LLC ("Stella"). Before the Court are the parties' cross-motions for partial summary judgment regarding Federal's duty to defend. ECF Nos. 21, 22. For the reasons set forth below, Plaintiff's motion for partial summary judgment is granted, and Defendant's motion for partial summary judgment is denied.

## I.   BACKGROUND

### A.   Undisputed Facts

Mede provides financial performance analytics software to the healthcare industry. ECF No. 1 ¶ 5. Federal insured Mede under two commercial liability insurance policies for the periods of December 31, 2012 through December 31, 2013 and December 31, 2013 through December 31, 2014. ECF Nos. 22-5, 22-6. Because the relevant provisions in both policies contain the same language, the Court refers to both policies collectively as the "Policy." Id.

The Policy provides: "Subject to all of the terms and conditions of this insurance, [Federal] will pay damages that the **insured** becomes legally obligated to pay by reason of liability . . . imposed by law . . . for . . . **personal injury** to which this coverage applies." ECF No. 22-5 at 6;

ECF No. 22-6 at 6 (emphasis in original).  "Personal injury" is defined to include "injury, other than **bodily injury**, **property damage** or **advertising injury**, caused by an offense of . . . electronic, oral, written or other publication of material that libels or slanders a person or organization (which does not include disparagement of goods, products, property or services)." ECF No. 22-5 at 37; ECF No. 22-6 at 36 (emphasis in original).  The Policy also contains the following exclusion: "[t]his insurance does not apply to **advertising injury** or **personal injury** arising out of breach of contract." ECF No. 22-5 at 18; ECF No. 22-6 at 17 (emphasis in original).

On February 26, 2014, two Ukrainian corporations, Stella Systems, LLC ("Stella") and Zlagoda Tekhnologii ("Zlagoda"), sued Mede in the United States District Court for the Northern District of California (the "underlying action").  ECF No. 1 ¶ 15; Stella Systems, LLC v. MedeAnalytics, Inc., No. 14-cv-00880-LB (N.D. Cal. Feb. 26, 2014) ("Stella").  Stella and Zlagoda filed a First Amended Complaint ("the underlying complaint") on April 28, 2014, alleging five claims: breach of contract, breach of the covenant of good faith and fair dealing, intentional interference with contract, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.  ECF No. 1 ¶ 15; Stella, No. 14-cv-00880-LB, ECF No. 18 (N.D. Cal. April 28, 2014).

According to the underlying complaint, Stella and Zlagoda "provided information technology services in the areas of business intelligence and financial analytics to [Mede] pursuant to an Agency Agreement between Zlagoda and Mede . . . ." Stella, ECF No. 18 at 2.  The underlying complaint alleged that "[b]eginning in 2013, Mede . . . solicited Stella's employees to work directly for Mede in an attempt to drive [Stella and Zlagoda] out of business, and in breach of a Non-Solicitation Clause in the [Agency] Agreement." Id.  The complaint further alleged that Mede "ma[d]e disparaging comments about Stella and its directors and officers." Id. ¶ 20.

On April 29, 2014, Mede tendered the underlying complaint to Federal for a defense.  ECF No. 22-8.  On May 28, 2014, Federal informed Mede that Federal had concluded that it no duty to defend or indemnify Mede in the underlying action.  ECF No. 22-9.

### B. Procedural History

Mede filed this action against Federal on September 9, 2015, alleging breach of contract

and breach of the implied covenant of good faith and fair dealing.  ECF No. 1.  On January 14, 2016, Mede and Federal filed cross-motions for partial summary judgment regarding Federal's duty to defend Mede in the underlying action,  ECF Nos. 21, 22, which motions the Court now considers.

### C. Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.  ECF No. 1 ¶¶ 1–2.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

## III. ANALYSIS

The parties' cross-motions for partial summary judgment ask the Court to determine whether Federal had a duty to defend Mede against the underlying action.  To answer this question, the Court must first determine whether the underlying action contained a potentially covered claim for personal injury arising from libel or slander, the only potentially covered claim asserted by Mede.  If the Court determines that a duty to defend arose based on the potential for a libel or slander claim, the Court must then determine whether the Policy's breach of contract exclusion negated the duty to defend.

**A.     Duty to Defend**

In California, "[a]n insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy." Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 59 Cal. 4th 277, 287 (2014). "Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the [underlying] complaint and the terms of the policy." Id. (quoting Scottsdale Ins. Co. v. MC Transportation, 36 Cal. 4th 643, 654 (2005)). "[T]hat the precise causes of action pled by the third party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." Id. (quoting Scottsdale, 36 Cal. 4th at 654). "[I]f any facts stated or fairly inferable in the [underlying] complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." Id. (quoting Scottsdale, 36 Cal. 4th at 655). Any "doubt as to whether an insurer owes a duty to defend 'must be resolved in favor of the insured.'" Id. (quoting Ringler Assocs. Inc. v. Maryland Cas. Co., 80 Cal. App. 4th 1165, 1186 (2000)).

To prevail on a motion for summary judgment regarding the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993) (emphasis in original). "In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." Id. (emphasis in original). "Thus, an insurer may be excused from a duty to defend only when 'the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" Swift, 59 Cal. 4th at 288 (quoting Montrose, 6 Cal. 4th at 300).

Here, Mede argues that allegations made in the underlying complaint were sufficient to suggest a potential for libel or slander liability covered by the Policy. ECF No. 22 at 15. The Policy covers personal injury liability, including "injury, other than bodily injury, property damage or advertising injury, caused by an offense of . . . electronic, oral, written or other

4

publication of material that libels or slanders a person or organization (which does not include disparagement of goods, products, property or services)." ECF No. 22-5 at 37; ECF No. 22-6 at 36 (emphasis omitted). In support of its position, Mede focuses on allegations in the underlying complaint that Mede "disparaged" Stella and Zlagoda, as well as their officers and directors. In particular, Mede argues that the following allegations in the underlying complaint show a potential for personal injury liability:

> Mede, its officers, directors, agents, and employees, began to make <u>disparaging comments</u> about Stella and its directors and officers in order to create employee dissatisfaction. Stella, No. 14-cv-00880-LB, ECF No. 18 ¶ 20 (emphasis added).

> After Stella employees were laid off in order to implement Mede's requested cuts, Mede began to express "deep concerns" about "people leaving," as well as the "attrition" Stella was experiencing. In addition, Mede began to complain to Stella that its service level had diminished even though Mede had demanded that fewer employees perform the same workload as before. Id. ¶ 21.

> Mede intentionally solicited Stella's employees, knowing that Stella's employees were essential to Stella in providing information technology services in the areas of business intelligence and financial analytics. Mede acted unreasonably and in bad faith towards [Stella and Zlagoda] through the following acts meant to harm [Stella's and Zlagoda's] businesses: (i) Mede <u>disparaged</u> [Stella and Zlagoda] and their officers and directors to [Stella's and Zlagoda's] employees . . . . Id. ¶ 43 (emphasis added).

> Mede solicited Stella's employees to work for Mede by <u>disparaging</u> Stella and its managers and directors and by offering higher pay which was made possible by Mede's classification of former Stella employees as independent contractors in violation of Ukrainian law. Id. ¶ 59 (emphasis added).

The Court concludes that these allegations "trigger at least a potential for coverage under the personal injury coverage for [libel and slander] provided by" the Policy. <u>Barnett v. Fireman's Fund Ins. Co.</u>, 90 Cal. App. 4th 500, 510 (2001). "Libel is a false and unprivileged publication by writing . . ., which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Slander includes "a false and unprivileged publication, orally uttered . . . which . . . [t]ends directly to injure [a person] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation

1   peculiarly requires, or by imputing something with reference to his office, profession, trade, or
2   business that has a natural tendency to lessen its profits . . . ." Cal. Civ. Code § 46.  While the
3   allegations in the underlying complaint did not provide factual support for each element of a libel
4   or slander claim, because "the underlying complaint alleged publication to third persons, and the
5   content of the statements were allegedly disparaging[,] [t]hese allegations sufficed to give rise to a
6   potentially covered claim" for libel or slander.  Barnett, 90 Cal. App. 4th 510 n.5.

7   This California Court of Appeal reached the same conclusion in Barnett v. Fireman's Fund
8   Ins. Co., 90 Cal. App. 4th 500 (2001).  In that case, a third party alleged that Barnett "engaged in a
9   variety of misconduct, including making disparaging remarks about" the third party.  Id. at 504.
10  Barnett tendered the underlying complaint to its insurer, the insurer rejected the tender, and
11  Barnett sued the insurer, alleging that the insurer's refusal to defend and indemnify the underlying
12  action constituted a breach of the underlying insurance policy.  The insurance policy included
13  coverage for "injury . . . arising out of one or more of the following offenses: ... Oral or written
14  publication of material that slanders or libels a person or organization or disparages a person's or
15  organization's goods, products or services. " Id. at 509.  Barnett argued that "the underlying
16  action raised a potentially covered claim for defamation because the complainants alleged that
17  appellants told numerous persons that [the third party's] methods of doing business were flawed
18  and would result in [the third party's] failure, and made other representations that disparaged and
19  damaged [the third party]."  The California Court of Appeal held that these allegations triggered
20  the potential for defamation coverage under the policy.  Id. at 510.  In so holding, the court noted
21  that "[t]he underlying complaint alleged publication to third persons, and the content of the
22  statements were allegedly disparaging.  These allegations sufficed to give rise to a potentially
23  covered claim."  Id. at 510 n.5.

24  Each of Federal's arguments to the contrary is unpersuasive.  First, Federal argues that
25  there is nothing in the underlying complaint to suggest that any statements made by Mede were
26  false.  ECF No. 24 at 5.  However, in California, a plaintiff pleading a claim of libel or slander
27  "need not specially allege the statements were false."  Barnett, 90 Cal. App. 4th 510 n.5.  Thus,
28  even absent a specific allegation of falsity in the underlying complaint, the allegations of

6

1  publications to third persons, which were allegedly disparaging "suffice[] to give rise to a
2  potentially covered claim."  Id.; KM Strategic Management, LLC v. Am. Cas. Co. of Reading PA,
3  -- F. Supp. 3d --, No. 15-cv-1869-CAS, 2015 WL 9455562, at *6 (C.D. Cal. Dec. 21, 2015)
4  ("Contrary to defendant's contention, however, California law plainly does not establish that 'a
5  duty to defend will be found only if all essential elements of the covered claim are alleged in the
6  [tendered] complaint.")[1]

7  Second, the Court rejects Federal's argument that "the alleged statements of Mede's own
8  concerns about attrition and complaints about the level of service can only be construed as
9  opinion," which cannot form the basis of a libel or slander claim.  ECF No. 24 at 6–7.  This
10 argument ignores paragraphs 20, 43, and 59 of the underlying complaint, which do not suggest
11 that the allegedly disparaging statements made by Mede were merely statements of opinion.
12 Stella, No. 14-cv-00880-LB, ECF No. 18 ¶¶ 20, 43, 59.

13 Third, Federal argues that the cases cited by Mede to show a potential for a defamation
14 claim based on similar facts, including the Barnett case, "all contained factual allegations lacking
15 here."  ECF No. 24 at 7.  In particular, Federal argues that the underlying complaint in Barnett
16 included more detail regarding the content of the allegedly disparaging statements than the
17 underlying complaint here.  Id. at 8.  While the underlying complaint discussed by the Barnett
18 court does appear to have included more detail regarding the allegedly disparaging statements in
19 that case, the Barnett court did not suggest that such detail was necessary.  Rather, the Barnett
20 court stated that the allegations in the underlying complaint "sufficed to give rise to a potentially
21 covered claim" because "[t]he underlying complaint alleged publication to third persons, and the
22 content of the statements were allegedly disparaging."  Barnett, 90 Cal. App. 4th at 510 n.5.  The
23 underlying complaint here alleged these same facts.  Moreover, even if more detail were necessary
24 under Barnett, because the Court concludes that the underlying complaint "could fairly be

---

[1] Federal notes that "the content of [the allegedly disparaging] remarks is not directly alleged in the [underlying complaint]." ECF No. 24 at 4. However, Federal cites no authority, and the Court is aware of no such authority, for the proposition that an underlying complaint must specifically allege the content of allegedly disparaging statements to trigger the potential for libel or slander liability.

7

amended to state a covered liability" claim for libel or slander by Stella's and Zlagoda's simply adding in more detail regarding the content of the allegedly disparaging statements, Swift, 59 Cal. 4th at 287, the Court rejects Federal's argument.

Accordingly, the Court concludes that, absent some exception, Federal owed a duty to defend Mede in the Underlying Action because the underlying complaint showed that a potential for personal injury coverage existed under the Policy. See Swift, 59 Cal. 4th at 287; Barnett, 90 Cal. App. 4th at 510.

### B. The Breach of Contract Exclusion

Federal argues that any potential for coverage based on libel or slander is "eliminated by the express exclusion for 'personal injury' arising out of breach of contract." ECF No. 24 at 8–11. Under California law, "[t]he insurer bears the burden of bringing itself within a policy's exclusionary clauses." HS Services, Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 644–45 (9th Cir. 1997). "Exclusionary clauses are strictly construed." Id. "An insurer may rely on an exclusion to deny coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies." Atl. Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1038–39 (2002) (Croskey, J.) (emphasis in original). "Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." Id. at 1039.

Here, the Policy here provides: "This insurance does not apply to . . . personal injury arising out of breach of contract." ECF No. 22-5 at 18; ECF No. 22-6 at 17 (emphasis omitted). Federal contends that even "[a]ssuming that a defamation claim could be conjured up from the allegations of the [underlying complaint], . . . any such claim necessarily arises from a breach of contract." ECF No. 24 at 9. Indeed, the underlying complaint "alleges that Mede's purpose in making the disparaging remarks was to solicit Stella's employees in breach of a written and implied contract. Thus, according to the [underlying complaint], the alleged disparaging words were part and parcel of the breach of contract." Id.

Mede responds by arguing that Federal has not met its burden of showing by "conclusive evidence" that the breach of contract exclusion applies because Federal has not shown that a

8

1  breach of contract occurred in the first place. ECF No. 28 at 11–12; see also ECF No. 22 at 12–
2  15. According to Mede, the breach of contract exclusion only applies to actual breaches of
3  contract, not alleged breaches of contract. Id. Thus, Mede contends that until Federal can show
4  that an actual breach of contract occurred, and the defamation claim arose out of that breach, the
5  Court cannot conclude that the exclusion applies.

6        The Court agrees with Mede's second argument and will therefore not address the first
7  argument. The breach of contract exclusion here presents the Court with essentially the same
8  question presented to the district court in KM Strategic Management, LLC v. American Cas. Co.
9  of Reading PA, -- F. Supp. 3d --, No. 15-cv-1869-CAS, 2015 WL 9455562, at *11 (C.D. Cal. Dec.
10 21, 2015). Like the exclusion at issue here, the exclusion at issue in KM Strategic was a "*breach*
11 of contract" exclusion, not simply a "contract" exclusion. Id. (emphasis in original). And just as
12 in KM Strategic, "the exclusion could have been written more broadly so as to cover all claims for
13 injury arising out of any 'alleged' breach of contract" in addition to all claims arising out of actual
14 breaches of contract. Id. Indeed, other exclusions in the Policy here incorporate such "actual or
15 alleged" language. ECF No. 28 at 16.[2] As Mede notes, "[i]f Federal had intended its Breach of
16 Contract exclusion to apply to an 'alleged' breach of contract, then it certainly knew how to say so
17 . . . ." Id. at 16. The fact that Mede did not include the "actual or alleged" language in the breach
18 of contract exclusion therefore "implies a manifested intent not to do so." Pardee Const. Co. v.
19 Ins. Co. of the West, 77 Cal. App. 4th 1340, 1359 (2000), as modified on denial of reh'g (Feb. 23,
20 2000) ("[T]he insurers' failure to use available language expressly excluding completed operations
21 coverage implies a manifested intent not to do so.").

22       Federal counters Mede's argument by noting that in Medill v. Westport Ins. Corp., 143

---

[2] For instance, the Policy provides: "This insurance does not apply to any actual or alleged bodily injury, property damage, advertising injury or personal injury arising out of, giving rise to or in any way related to any actual or alleged: assertion; or infringement or violation; by any person or organization . . . of any intellectual property law or right . . . ." ECF No. 22-5 at 21; ECF No. 22-6 at 20 (emphasis omitted) (underlining in original). The Policy also provided: "[t]his insurance does not apply to bodily injury, property damage, advertising injury or personal injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . ." ECF No. 22-5 at 22; ECF No. 22-6 at 21 (emphasis omitted) (underlining in original).

Cal. App. 4th 819, 829–832 (2006), a California Court of Appeal did not require conclusive evidence of an actual breach of contract where the breach of contract exclusion did not include the phrase "actual or alleged." In that case, plaintiffs were the officers and directors of a non-profit that had issued bonds in connection with the acquisition and renovation of several former hospitals. Id. at 823–24. When the hospitals failed and went into receivership, the bondholders sued the plaintiffs and their non-profit, alleging that the facilities' failures were due to plaintiffs' "wrongful disbursements, diversions of bond proceeds and improper co-mingling of funds." Id. at 824. Plaintiffs tendered the lawsuit to their insurer, which denied coverage on the ground that the alleged conduct fell within the breach of contract exclusion in plaintiffs' policy. When plaintiffs filed suit, the trial court entered summary judgment, and the Court of Appeal affirmed. Defendants here cite Medill as authority for the proposition that even an "alleged" breach of contract is sufficient to place the allegations of a complaint within a policy's breach of contract exclusion.

Medill provides little support for Federal's position. First, the Medill court simply did not confront the question of whether all "breach of contract" exclusions encompass actual or alleged breaches of contract. Rather, the Medill court was focused exclusively on whether certain allegedly covered tort claims "arose out of" the alleged breach of contract. 143 Cal. App. 4th at 831 ("Here, the tort claims against the directors and officers are not independent of the breach of contract claims."). While the Medill court appears to have assumed that a "breach of contract" exclusion lacking the "actual or alleged" phrase nonetheless encompassed alleged breaches of contract, the Court does not find this unstated assumption particularly compelling, especially in light of the KM Strategic court's reasoning directly on point holding otherwise. Second, there is no indication that the Medill court was confronted with an insurance policy, which, as here, included other exclusions that used the "actual or alleged" language absent from the breach of contract exclusion.[3]

---

[3] Federal also contends that "[i]f Mede's argument were adopted, the 'breach of contract' exclusion would never apply to the duty to defend, where potential coverage based on alleged liability is the issue, and the insured could defeat the exclusion simply by denying the allegations of the third party complaint." ECF No. 24 at 10. While Federal may be correct that "the insured

10

Because the Court must strictly construe the breach of contract exclusion, the Court holds that "to avoid its duty to defend, [Federal] must point to 'conclusive evidence' establishing that any potential liability that the insured faced for allegedly defaming [Stella and Zlagoda] necessarily arose out of an *actual* breach—not an alleged breach—of the aforementioned [Agency Agreement] or some other contract." KM Strategic, 2015 WL 9455562, at *11 (citing Atl. Mut. Ins. Co., 100 Cal. App. 4th at 1038–39). Federal does not argue that it has "conclusive evidence" of an actual breach of contract. Accordingly, the Court concludes that the breach of contract exclusion does not apply, and that Federal had a duty to defend Mede against the underlying action.[4]

## CONCLUSION

For the foregoing reasons, the Court concludes that Federal had a duty to defend Mede in the underlying action. The Court therefore grants Mede's motion for partial summary judgment and denies Federal's motion for partial summary judgment.

IT IS SO ORDERED.

Dated: February 19, 2016

_____
JON S. TIGAR
United States District Judge

---

could defeat [the breach of contract] exclusion simply by denying the allegations of the third party complaint," the Court notes that an insurer in Federal's position could invoke the breach of contract exclusion if, and once, the insurer obtains "conclusive evidence demonstrating that the exclusion applies," Atl. Mut. Ins. Co., 100 Cal. App. 4th at 1038–39, i.e. if, and once, the insurer obtains conclusive evidence that a breach of contract actually occurred and that the potentially covered claim "arose out of" the breach of contract.

[4] Mede also argues that the potential defamation claim did not "arise out of" a breach of contract because "[a] successful defense of the contract claim would not . . . have necessarily eliminated Mede's potential liability for defaming Stella and Zlagoda. The allegations that Mede disparaged Stella and Zlagoda, as well as their officers, directors and managers, were independently actionable as defamation regardless of whether any breach of contract was proven." ECF No. 28 at 10. Because the Court agrees that the breach of contract allegations in the underlying complaint are insufficient by themselves to bring Mede's alleged conduct within the policy's breach of contract exclusion, it does not reach this additional argument.